**ARIEL LAND OWNERS, INC., Plaintiff,**

v.

**Lori DRING and Nancy Asaro, Defendants.**

No. CIV.A.3:01–CV–0294.

United States District Court, M.D. Pennsylvania.

Jan. 28, 2003.

Joseph A. O'Brien, Oliver Price & Rhodes, Clarks Summitt, PA, Michael P. Lehutsky, Honesdale, PA, for Plaintiff.

Donald H. Brobst, Elizabeth C. Leo, Rosenn Jenkins & Greenwald, Garry S. Taroli, Wilkes–Barre, PA, Jennifer J. Clark, U.S. Attorney's Office, Scranton, PA, Michael Profita, Huttle Profita LLC, Teaneck, NJ, for Defendants.

Mark R. Zimmer, Honesdale, PA, for Unknown Party.

---

**1.** This matter was originally docketed as No. 188–C–1999 in the Court of Common Pleas of Wayne County.

**2.** Plaintiff filed an amended complaint in the Court of Common Pleas of Wayne County on

## MEMORANDUM

CAPUTO, District Judge.

Before the Court is a motion by Defendants Lori Dring and Nancy Asaro to stay concurrent state court proceedings concerning this matter. (Doc. 57.) In opposition, Plaintiff Ariel Land Owners, Inc. contends that Defendants removed this case in violation of the one-year time limitation of 28 U.S.C. § 1446(b). Therefore, Plaintiff argues, the Court lacks subject matter jurisdiction over this case. (Doc. 61.) The Court agrees. I lack subject matter jurisdiction to hear this case because § 1446(b) applies to this case and because this one-year time limitation is a jurisdictional requirement. I will remand this matter to the Court of Common Pleas of Wayne County, Pennsylvania. Because I lack subject matter jurisdiction, all other pending motions will be denied as moot.

## DISCUSSION

### 1. *Procedural history*

Plaintiff commenced this action on May 17, 1999 by filing a complaint to quiet title in the Court of Common Pleas of Wayne County.[1] This action could have been filed in federal court through diversity jurisdiction, and it was removable at the time of filing.[2] On February 15, 2001—nearly 21 months after Ariel commenced this action—Defendants removed based on diversity jurisdiction. On March 22, 2001, Plaintiff filed a motion to remand solely on the ground that Defendants failed to satisfy the $75,000 amount-in-controversy requirement. (Doc. 4.) The Court denied

February 12, 2001. Although Defendants imply that this has some significance to the application of § 1446(b) (Doc. 74 at 2–3), it does not. This matter was removable when it was filed on May 17, 1999.

Plaintiff's motion on July 3, 2001. (Doc. 16.)

■ The motion before the Court is really a dispute over whether this case will proceed in state or federal court: Plaintiff wants to be in state court; Defendants want to be in federal court. Each side had the opportunity to secure its desired forum. Defendants could have ensured themselves a federal forum by removing within 30 days of the filing of the complaint in 1999. (28 U.S.C. § 1446(b) states that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant" in cases that are initially removable.) After Defendant failed to remove within 30 days of filing, Plaintiff had its chance to ensure a state forum. Plaintiff could have filed a motion to remand within 30 days of Defendant's late removal; the case then would have been remanded. *See* 28 U.S.C. § 1447(c). Defendant's failure to comply with the 30–day time limitation is a procedural defect, and Plaintiff waived this requirement by not objecting within 30 days. *In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 450–52 (3d Cir.2000); *Korea Exchange Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 50–51 (3d Cir.1995); *Two Bros. Scotto, Inc. v. SDG Macerich Props., L.P.*, 2000 WL 1052017 at *3 (E.D.Pa. July 24, 2000) (a defendant's failure to comply with the 30–day requirement of § 1446(b) is a waivable procedural defect in the removal process under the rubric of 28 U.S.C. § 1447(c) and not a non-waivable jurisdictional defect).

### 2. *Section 1446(b) and the "except that" clause*

The issue before the Court relates to § 1446(b) and the scope and nature of the "except that" clause. Section 1446(b) reads as follows:

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, *except that. a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.*

(emphasis added).

Two questions arise concerning the one-year time limitation of the "except that" clause:

1. Does the one-year time limitation apply to *all* diversity cases or only cases that were *not* initially removable?

2. Is this time limitation procedural or jurisdictional?

Defendant argues that the one-year time limitation applies only to initially non-removable cases, and therefore it does not apply to this case. Alternatively, Defendant argues that the one-year time limitation is procedural (not jurisdictional) and therefore, under § 1447(c), it was waived because Plaintiff did not raised this objection within 30 days of removal. Plaintiff argues that the one-year time limitation applies to all diversity cases and that the

one-year time limitation is a non-waivable jurisdictional requirement that may be raised pursuant to § 1447(c) at any time prior to final judgment.[3]

### 3. Does the one-year time limitation apply to all diversity cases or only cases that were not initially removable?

The first question is whether the one-year time limitation applies to all diversity cases or only diversity cases that were not removable at the time they were initially filed. The Court of Appeals for the Third Circuit has not answered this question; nor has the United States Supreme Court addressed it directly. Thus, I must rely on my own interpretation of the statute's text and structure along with persuasive authority of other courts—including the Supreme Court—and consideration of the statute's purpose and legislative history.

### a. Discussion of "plain meaning" cases

Courts of Appeals in four circuits, focusing on the "plain meaning" of § 1446(b), have held that the one-year time limitation applies only to cases that were not initially removable. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1316 (9th Cir.1998); *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 886 (5th Cir.1998); *Brown v. Tokio Marine and Fire Ins. Co.*, 284 F.3d 871, 873 (8th Cir.2002); *Brierly v. Alusuisse*

*Flexible Packaging, Inc.*, 184 F.3d 527, 534–35 (6th Cir.1999).[4] I am not persuaded by the analysis in these decisions.

This line of cases originated in 1998 when the Court of Appeals for the Ninth Circuit issued the *Ritchey* decision. Two months later, the Court of Appeals for the Fifth Circuit issued a similar decision in *Deshotel*.[5] In *Brierly* and *Brown*, the Sixth and Eighth Circuit Courts of Appeals, respectively, followed *Ritchey* and *Deshotel*. I will focus on *Ritchey* and *Deshotel*, as they provide the most detailed explanation of the view for which they stand.

*Ritchey* begins its analysis by looking at "plain language" of § 1446(b) as a whole, which includes the statute's sentence structure. Citing the "general rule" that "a qualifying phrase or clause only modifies that which immediately precedes it," *id.* at 1316 (quoting *Zogbi v. Federated Dep't Store*, 767 F.Supp. 1037, 1039 (C.D.Cal.1991), *Zogbi citing* Norman J. Singer, SUTHERLAND STATUTORY CONSTRUCTION, § 47.33 (4th ed.1984)), the *Ritchey* court concluded that the "except that" clause must apply only to the type of cases described in the words immediately preceding the comma—*viz.*, cases that were not removable at the time they were initially filed. To reach any other conclusion would be to "twist ordinary language usage and rules of grammar," the *Ritchey*

---

3. Section 1447(c) provides in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

4. Defendant mistakenly cites *Orthotic Sales and Service, Inc. v. La Rosa*, 1998 WL 461847 (E.D.Pa. Aug. 6, 1998), a Pennsylvania district court decision, as standing for the rule that the one-year time limitation of § 1446(b) applies only to initially non-removable cases. This is a misreading of *Orthotic Sales*. While

*Orthotic Sales* does state that the one-year time limitation "applies to cases which were not initially removable," *id.* at *1, this holding comes in the context of the court's rejection of the view that initially non-removable cases were *exempted* from the coverage of the one-year time limitation.

5. *Ritchey* was decided on April 3, 1998. *Deshotel* was decided on June 1, 1998. While the *Deshotel* decision does not cite *Ritchey*, the two decisions apply a very similar analysis.

court concluded. *Id.* at 1316.[6]

Similarly, the *Deshotel* court noted the subordinate positioning of the "except that" clause, suggesting that any construction of § 1446(b) that applied the one-year time limitation to all cases would require one to "read the words 'except that' out of the statute and treat the remainder of the phrase as if it were an independent one-sentence paragraph." *Id.* at 886. "If Congress had intended for the one-year limit to apply to all diversity removals," the *Deshotel* court continued, "it is highly unlikely it would have chosen such an eccentric and obscure means to accomplish its purpose." *Id.* at 886.

The *Ritchey* and *Deshotel* courts both viewed their approach to the interpretation of § 1446(b) as one of strict construction.[7] The *Deshotel* court acknowledged that "[i]n determining the meaning of the statute, we must look not only to the particular statutory language, but also to the statute as a whole, including its design, object, and policy." Yet in the end, the *Deshotel* court finds the legislative history ambiguous and resolves this issue through a straightforward analysis of the plain meaning of the text. *Id.* at 886. The *Ritchey* court gives little weight to factors other than the statute's plain meaning, explaining that "[b]ecause we are satisfied that this reading is plain on the face of the statute, there should be little reason to consider legislative history." *Id.* at 1316. The *Ritchey* court discusses the legislative history briefly, concluding that it is "rather unhelpful." *Id.* at 1317.

For three reasons, I respectfully disagree with the view adopted in *Ritchey*

and *Deshotel* that the scope of the one-year time limitation can be determined by the statute's plain meaning. First, although the Supreme Court has not addressed this question directly, the underlying methodology and the substance of *Ritchey* and *Deshotel* appear out-of-step with the Supreme Court's two recent decisions concerning § 1446(b).

Second, the *Ritchey* and *Deshotel* courts' conclusion that the plain meaning of § 1446(b) requires that the one-year time limitation apply only to cases that were not initially removable was predicated upon the "last antecedent rule," a rule of statutory construction that can be applied only after a thorough consideration of the purposes underlying the statute in question. The *Ritchey* and *Deshotel* courts both applied the last antecedent rule, which is really a guideline, as though it were dispositive.

Third, the significant number of judges and scholars who have construed the one-year time limitation broadly, as applying to all diversity cases, makes it impossible for me to conclude that the meaning of the "except that" clause is plain, obvious, or without ambiguity.

### i. *Two Supreme Court decisions concerning § 1446(b)*

Two recent Supreme Court decisions cast doubt upon the view that the scope of the one-year time limitation of § 1446(b) can be determined by plain meaning alone. In *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999), the Supreme Court considered whether the defendant's

---

**6.** The principle of statutory construction to which *Zogbi* alludes is sometimes referred to as the "last antecedent rule." *See Braaten v. State,* 705 P.2d 1311, 1321 (Alaska App.1985). The outlines and contour of this "rule" are explained more fully *infra.*

**7.** The *Ritchey* court professes to apply "strict construction," while the *Deshotel* court points to the statute's "ordinary meaning."

receipt of a faxed, file-stamped courtesy copy of a complaint prior to formal service set in motion the 30–day time limitation for removal. To answer this question, the Court interpreted the following portion of § 1446(b):

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading. . . .

A six-to-three majority held that the faxed copy of the complaint *did not* start the 30–day period running. Writing for the Court, Justice Ginsburg rejected as "uninformative" the lower court's opinion holding that the meaning of § 1446(b) is apparent from the "plain meaning" of its text. *Id.* at 353, 119 S.Ct. 1322. Instead, the Court construed § 1446(b) not only in view of an extensive analysis of the statute's legislative history, but also in view of the "traditional understanding" of the role of service in American legal practice. *Id.* at 350–53, 119 S.Ct. 1322. Ultimately, the Court settled on an interpretation that "adheres to tradition, makes sense of the phrase 'or otherwise,' and assures defendants adequate time to decide whether to remove an action to federal court." *Id.* at 354, 119 S.Ct. 1322.

The Court's emphasis on legislative history and traditional understandings contrasts sharply with the methodology employed by the lower court. In the opinion below,[8] the Court of Appeals for the Eleventh Circuit proceeded with a line of analysis much like that used by the *Ritchey*

court, emphasizing the "plain meaning" of § 1446(b).[9] The Eleventh Circuit stated that "[b]y and large, our analysis begins and ends" with the words "receipt . . . or otherwise." *Murphy Bros.*, 125 F.3d at 1398 (11th Cir.1997). Engaging in close textual analysis, the Eleventh Circuit worked through the language:

> "Receipt" is the nominal form of "receive," which means broadly "to come into possession of" or to "acquire." Attached to "receipt," the phrase "through service or otherwise" opens a universe of means besides service for putting the defendant in possession of the complaint. Limiting the triggering event to "service," on the other hand, would violate these words' broad meaning by trimming that universe down to a narrow spectrum of methods.

*Id.*

In the end, however, this close textual analysis failed to persuade a majority of the Court, for whom the arguments concerning "principle," "traditional understanding," and legislative history—at least in the context of the construction of § 1446(b)—were more persuasive.[10] Although *Murphy Bros.* concerned a different portion of § 1446(b) than is before me now, I find it significant that a majority of the *Murphy Bros.* Court held that extratextual factors could overcome what appears to be a far more clean-cut example of plain statutory meaning than is presented by the "except that" clause. I take *Murphy Bros.* to indicate that the Justices have chosen not follow a statute's sup-

---

**8.** 125 F.3d 1396 (11th Cir.1997).

**9.** *See Murphy Bros.*, 526 U.S. at 353, 119 S.Ct. 1322 ("[t]he Eleventh Circuit relied on the 'plain meaning' of § 1446(b) that the panel perceived").

**10.** Chief Justice Rehnquist, joined by Justices Scalia and Thomas, wrote in dissent that the

facsimile sent to the defendant "triggered the 30–day removal period under the plain language of 28 U.S.C. § 1446(b)" and criticized the majority for doing "little to explain why the plain language of the statute should not control." *Murphy Bros.*, 526 U.S. at 357, 119 S.Ct. 1322 (Rehnquist, C.J., dissenting).

posed "plain meaning" without first carefully considering purpose and policy.

On a more substantive level, *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) provides the Court with guidance as to the proper construction of the one-year time limitation. Although *Caterpillar* did not squarely address the precise issue currently before me,[11] it is noteworthy that Justice Ginsburg, writing for the unanimous *Caterpillar* Court, explained the one-year time limitation as follows:

When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court, provided that no defendant "is a citizen of the State in which such action is brought." In a case not originally removable, a defendant who receives a pleading or other paper indicating the postcommencement satisfaction of federal jurisdictional requirements—for example, by reason of the dismissal of a nondiverse party—may remove the case to federal court within 30 days of receiving such information. § 1446(b). *No case, however, may be removed from state to federal court based on diversity of citizenship "more than 1 year after commencement of the action."*

*Caterpillar,* 519 U.S. at 68–69, 117 S.Ct. 467 (emphasis added, citations omitted). As other courts have noted, the language of *Caterpillar* is "absolute."[12] Applying *Caterpillar,* lower courts have stated with similar clarity that "[n]o case may be removed based on diversity more than one year after commencement of the action." *Haines v. P & G Mfg. Co.,* 2002 WL 1758912 at *1 (D. Kan. June 25, 2002). One treatise on federal procedure has observed that *Caterpillar* poses a possible problem with the view that the plain meaning of the one-year time limitation requires it to apply only to cases that were initially non-removable.[13]

The *Ritchey* court distinguished *Caterpillar,* stating that "the Court was speaking of actions not originally removable." *Ritchey,* 139 F.3d at 1317. I do not believe that the clear language of the Supreme Court can be dismissed on this basis. The *Caterpillar* Court stated, in a single, independent sentence: "No case, however, may be removed from state to federal court based on diversity of citizenship 'more than 1 year after commencement of the action.'" *Caterpillar,* 519 U.S. at 69, 117 S.Ct. 467.[14] Nothing in the

---

**11.** In *Caterpillar,* a case was removed to federal court based on diversity, even though complete diversity did not exist, and the district court erroneously denied the plaintiff's motion to remand. Subsequently, prior to final judgment, the non-diverse party settled out of the case. The question before the Court was whether the absence of complete diversity at the time of removal required the trial court's verdict to be vacated. The Court held that it did not, provided that the requirements of diversity jurisdiction were satisfied at the time judgment was entered.

**12.** *See, e.g., Barnett v. Sylacauga Autoplex,* 973 F.Supp. 1358, 1362 (N.D.Ala.1997) ("[t]he Supreme Court's language in *Caterpillar* is absolute, allowing no exclusions").

**13.** 16 Moore's Federal Practice 3d, § 107.30[3][a] (3d ed.2002).

**14.** It is interesting to note in the margin that the Supreme Court in *Caterpillar* stated its understanding of the one-year time limitation in a manner almost precisely in line with what the *Deshotel* court, two years later, commented would be a formulation that would support the view that the one-year time limitation applies to all cases. *See Deshotel,* 142 F.3d at 886 (courts applying the one-year time limitation to all diversity cases "read the words 'except that' out of the statute and treat the remainder of the phrase as if it were an independent one-sentence paragraph."). *See supra* at 593.

sentences surrounding the Court's statement indicates the Court's intent to limit the one-year time limitation to initially non-removable diversity cases. Nothing in the opinion indicates to me that the Court misspoke or intended its words to mean anything other than what they appear to mean. At the very least, the Court's language in *Caterpillar* casts serious doubt on the notion that a contrary construction is self-evident or compelled by the plain meaning of § 1446(b).

### ii. *The misapplication of the "last antecedent rule"*

The *Ritchey* and *Deshotel* courts both predicated their conclusion that the plain meaning of § 1446(b) requires a narrow construction of the "except that" clause on a misapplication of what is sometimes called the "last antecedent rule." The *Ritchey* court did so explicitly; the *Deshotel* court implicitly.

The *Ritchey* court invoked the last antecedent rule directly by citing *Zogbi v. Federated Dep't Store*, 767 F.Supp. 1037 (C.D.Cal.1991), which itself cites an earlier edition of the treatise *Sutherland Statutory Construction* as authority for the existence (in the words of the *Ritchey* court) of the "general rule" that "a qualifying phrase or clause only modified that which immediately precedes it." *Ritchey*, 139 F.3d at 1316.[15] The *Deshotel* court, without specifically citing the last antecedent rule, clearly relied on this principle, stating that "[n]ormally, one would read such a phrase as relating only to the sentence or paragraph of which it is a part." *Deshotel*, 142 F.3d at 886.

■ This "general rule" of statutory construction, however, is more a guideline

than a rule, and the last antecedent rule is clearly far less authoritative than the quotation that *Ritchey* borrowed from *Zogbi* suggests. A close inspection of · *Sutherland Statutory Construction* (an earlier edition of which *Zogbi* itself cites, *see id.* at 1039) reveals that last antecedent rule is in fact far from a rule at all. The most recent edition of *Sutherland Statutory Construction* offers the following explanation and caveats concerning the application of this principle:

> Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. ***The rule is another aid to discovery of intent or meaning and is not inflexible and uniformly binding. Where the sense of the entire act requires the qualifying word or phrase to apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent.***[16]

*Id.* (emphasis added). This explication of the last antecedent rule makes quite clear that we are dealing not with a hard-and-fast rule, but rather an "aid to discovery of intent" that applies only "where no contrary intention appears." The last antecedent rule is just one of several "tools" that a court may use in interpreting a statute. It does not prohibit the court from examining the statute's purpose, nor does it lessen the court's role in mediating tensions between a statute's text and pur-

---

**15.** *See also* 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION, § 47.33 (4th ed.1984).

**16.** 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION, § 47.33 (6th ed.2000).

pose.[17]

The full articulation of last antecedent rule also makes clear that *Ritchey* is unjustified in claiming that "plain meaning" results in there being "little reason to consider legislative history." *Id.* at 1316. The last antecedent rule is the foundation of the *Ritchey* court's conclusion that the "except that" clause at the end of § 1446(b) refers only to cases that were not initially removable. Yet the last antecedent rule, as explained by *Sutherland Statutory Construction*, § 47.33, provides that a qualifying word or phrase (such as the "except that" clause) will be construed to apply to "several preceding or even succeeding sections" if "the sense of the entire act requires" such a construction. Thus, before a court can know whether to apply the last antecedent rule, it must first consider the "sense of the entire act."

The *Ritchey* and *Deshotel* courts nonetheless treated the last antecedent rule as though it were the beginning and end of the analysis of the plain meaning of § 1446(b). As I believe the foregoing analysis demonstrates, the applicability of the last antecedent rule depends upon whether it would conflict with the underlying purpose of the statute (or, in the argot of *Sutherland's Statutory Construction*, "the sense of the entire act"). For this reason as well, I respectfully believe *Ritchey* and *Deshotel* should not have relied upon plain meaning to construe the scope of the one-year time limitation.

---

**17.** As Judge Learned Hand wrote of interpreting statutes, it is "not enough for the judge just to use a dictionary. If he should do no more, he might come out with a result which every sensible man would recognize to be quite the opposite of what was really intended; which would contradict or leave unfulfilled its plain purpose." Learned Hand,

### iii. *The weight of contrary interpretations in lower courts and learned treatises*

A significant number of learned judges and scholars have read the one-year time limitation as applying to all diversity cases or, at the very least, have thought the language to be ambiguous. This is a third reason why I do not agree that the plain meaning of § 1446(b) conclusively answers the question of the one-year time limitation's scope.

Several courts have construed the text of the "except that" clause in a way that is diametrically opposed to the *Ritchey* and *Deshotel* courts' construction. For instance, in *Foiles v. Merrell Nat'l Laboratories*, 730 F.Supp. 108 (N.D.Ill.1989), the court read the "plain language" of § 1446(b), finding that it "reads as a blanket prohibition on removal of a diversity case more than one year after commencement of the action." *Id.* at 110. Similarly, in *Santiago v. Barre Nat. Inc.*, 795 F.Supp. 508 (D.Mass.1992), the court read § 1446(b) and concluded that "[t]he plain language of the statute forbids removal on diversity grounds of cases which commenced in state court more than one year previously," adding that "[t]he statute contains no exceptions to its prohibitory language." *Id.* at 510. In *Brock v. Syntex Laboratories, Inc.*, 791 F.Supp. 721 (E.D.Tenn.1992), the court emphasized the one-year time limitation's broad scope, finding that "[t]he plain language of the amendment provides that a case 'may not be removed ... more than one year after commencement'." *Id.* at 722. In *Rez-*

"How Far Is a Judge Free in Rendering a Decision?," THE SPIRIT OF LIBERTY 103, 106 (I.Dilliard, ed., 3d ed.1960) (*quoted in* Robert J. Gregory, "Overcoming Text in an Age of Textualism: A Practitioner's Guide to Arguing Cases of Statutory Interpretation," 35 AKRON L. REV. 451, 452 n. 3 (2002)).

*endes v. Dow Corning Corp.,* 717 F.Supp. 1435 (E.D.Cal.1989) the court noted that, in enacting the one-year time limitation, "Congress has clearly expressed its intent in the plain language of 28 U.S.C. § 1446(b) that a diversity case which has been before a state court for more than one year should stay there." *Id.* at 1437–38. Other courts, not specifically invoking plain meaning, have also reached the conclusion that the one-year time limitation applies to all diversity cases, not only those that were initially removable.[18]

Wright, Miller and Cooper state in their authoritative treatise on federal procedure that construing the one-year time limitation to apply only to initially non-removable cases "is not an inevitable construction of the statute." In fact, the authors observe that "[t]extually, it might be read as applying to all diversity cases, whether initially removable or not."[19]

I too read the text of the "except that" clause as being ambiguous in its scope. While *Ritchey* and *Deshotel* make a fair point that Congress could have indicated more clearly its intent to apply the one-year time limitation to all diversity cases, the opposite argument can also be made. If Congress had intended to apply the one-year time limitation exclusively to cases that were initially non-removable, Congress could have made its intend unambig-

uous by phrasing the amendment, "except that an initially non-removable case may not be removed ...." For this reason, among the others discussed above, I find that the text of § 1446 does not clearly indicate Congress's intent as to the scope of the one-year time limitation.

### b. *Construing the scope of the "except that" clause*

 Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Chase Manhattan Bank (Nat'l Asso.) v. South Acres Dev. Co.,* 434 U.S. 236, 239–40, 98 S.Ct. 544, 54 L.Ed.2d 501 (1978). They possess only that power authorized by Constitution and statute. *Willy v. Coastal Corp.,* 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992); *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). There is a presumption against the exercise of federal jurisdiction. *See Turner v. Bank of North America,* 4 U.S. 8, 4 Dall. 8, 1 L.Ed. 718, (1799). The removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Brown v. Francis,* 75 F.3d 860, 865 (3d Cir.1996); *Abels v. State Farm Fire & Cas. Co.,* 770 F.2d 26, 29 (3d Cir.1985);

---

**18.** *See O'Brien v. Powerforce, Inc.,* 939 F.Supp. 774, 778 (D.Haw.1996) ("[t]his Court agrees ... that the one year limitation in § 1446(b) on removal of cases on the basis of diversity jurisdiction applies to removals under both paragraphs of § 1446(b)"); *Rogers v. All Am. Life Ins. Co.,* 1998 WL 401599 at *3 (N.D.Tex. July 10, 1998) (holding broadly that, "[i]n reading the plain language of § 1446(b), the commentary to § 1446(b), and the applicable case law, the Court finds that removal of a case from state to federal court based on diversity jurisdiction may not be accomplished more than one year beyond the filing of the initial complaint"); *Rashid v. Schenck Const. Co., Inc.,* 843 F.Supp. 1081,

1087 n. 6 (S.D.W.Va.1993) ("there is no discernible basis for applying the one-year cap to cases which later become removable but not to those removable on the initial pleading. Accordingly, the one-year cap on removal on the basis of diversity jurisdiction is applicable here notwithstanding the presence of diversity jurisdiction from the time the [complaint] was issued"); *Whisenant v. Roach,* 868 F.Supp. 177, 178 (S.D.W.Va.1994) (one-year time limitation applies to all diversity cases).

**19.** 14C WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE, § 3732 (1998).

*Brewer v. Geisinger Clinic, Inc.*, 2002 WL 57259 at *2–4 (M.D.Pa. Jan. 15, 2002) (Vanaskie, C.J.); *Ogletree v. Barnes*, 851 F.Supp. 184, 186 (E.D.Pa.1994) (*citing Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990)).[20] The burden of establishing federal jurisdiction rests upon the party asserting jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). When the Court faces a question of how to construe a statutory provision such as the one-year time limitation of § 1446(b), these basic principles require the Court to err in favor of the construction that is more restrictive of federal jurisdiction.

Moreover, looking specifically at the Congressional purposes underlying the one-year time limitation, it is evident to me that Congress intended to apply the one-year time limitation to all cases. Given the Congressional purpose of not allowing cases to progress in state court and then be removed, it makes no sense for a case originally removable to progress in state court simply because the party who could have removed it did not do so, and then after one year had passed, allow it to be removed. The same target of Congressional purpose, *viz.*, not disrupting a case which has progressed for a year in state court, is present in both the scenario of the case originally removable and the scenario of the case not originally removable.

The legislative history supports a broad application of the one-year time limitation. The *Congressional Record* states that Congress viewed the amendment by which it instituted the one-year time limitation as "a means of reducing the opportunity for removal after substantial progress has been made in state court." S. Res. 1482, 100th Cong.2d Sess., 134 CONG. REC. S16308 (Oct. 14, 1988).[21] Congress's main concern was that "[r]emoval late in the proceedings may result in substantial delay and disruption." *Id.*

Congress's intent, as indicated in the legislative history, was to create an absolute one-year bar to removal. Although the *Ritchey* court suggested that Congress could not have intended the one-year time limitation to apply to cases that were initially removable because "no substantial progress could ordinarily be expected if the case were immediately removable at the time of the initial pleading" as "the case would either be removed promptly or not at all in that event," *Ritchey*, 139 F.3d at 1317, the case currently before me provides an example of how an initially removable case might be removed after substantial progress had been made in state court.

---

**20.** *See generally Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) ("[t]he power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. 'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' "); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states has always been rigorously enforced by the courts").

**21.** *See* The Judicial Improvements and Access to Justice Act, Pub.L. 100–702, 102 Stat. 4642–4673 (1988); *Rodriguez v. ACandS, Inc.*, 2001 WL 333101 at *1–3 (E.D.La. April 4, 2001) ("it is obvious from the legislative history of this provision that its purpose was to reduce the opportunity for removal late in the proceedings, because this can result in disruption or delay of the action.... Thus, Congress was concerned with allowing parties to remove a case after the case has made substantial progress in state court").

In sum, I find that the one-year time limitation applies to all diversity cases. This construction is in harmony with the well-established principle that federal courts are courts of limited jurisdiction. This construction is in harmony with the legislative history of the 1988 Amendment to § 1466 by which the "except that" clause was enacted. Finally, this construction is in harmony with the available Supreme Court authority on the issue (*i.e.* *Murphy Bros.* and *Caterpillar* ).

### 4. *Is the one-year time limitation procedural or jurisdictional?*

■ Having decided that § 1446(b) applies to all diversity cases, I turn to the second question: whether the one-year time limitation is procedural or jurisdictional for the purpose of 28 U.S.C. § 1447(c). Section 1447(c) distinguishes between procedural and jurisdictional defects in the removal process:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

*Id.* Litigants cannot waive jurisdictional defects in the removal process; however, litigants do waive procedural defects if they fail to file a motion to remand on that basis within 30 days of removal. *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702–706, 92 S.Ct. 1344, 31 L.Ed.2d 612

(1972); *McGlinchey v. Hartford Accident and Indemnity Co.*, 866 F.2d 651, 653 (3d Cir.1989); *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 960 (3d Cir.1980). In this case, Plaintiff did not file a timely motion to remand on the basis of the one-year time limitation. If the one-year time limitation is procedural, then the defect has been waived and the Court retains jurisdiction; however, if it is jurisdictional, this defect was not waivable and the case must be remanded. I hold that the one-year time limitation is jurisdictional and will accordingly remand this case to state court.

There is no clear "majority position" among federal courts concerning the status of the one-year time limitation under § 1447(c). In *Price v. Messer*, 872 F.Supp. 317 (S.D.W.Va.1995), the court held that "the one year cap of § 1446(b) is recognized to be a jurisdictional limitation that should be rigidly observed to prevent removal of diversity cases pending in state court for more than one year." *Id.* at 320.[22] On the other hand, the Court of Appeals for the Fifth Circuit held in *Barnes v. Westinghouse Elec. Corp.*, 962 F.2d 513, 516 (5th Cir.1992) that the one-year time limitation is merely procedural and may be waived.[23] Neither the Supreme Court nor the Court of Appeals for the Third Circuit has ruled on this question. I am persuaded that the language of § 1446(b), general principles of federal jurisdiction, and the overall structure of the rules governing removal jurisdiction mili-

---

**22.** *See also Foiles by Foiles v. Merrell Nat'l Labs.*, 730 F.Supp. 108, 110 (N.D.Ill.1989) (one-year time limitation is jurisdictional); *Whisenant v. Roach*, 868 F.Supp. 177 (S.D.W.Va.1994); *Rashid v. Schenck Const. Co., Inc.*, 843 F.Supp. 1081 (S.D.W.Va.1993); *Brock by Brock v. Syntex Labs., Inc.*, 791 F.Supp. 721, 722–23 (E.D.Tenn.1992); *Smith*

*v. MBL Life Assurance Corp.*, 727 F.Supp. 601, 602–03 (N.D.Ala.1989); *Perez v. General Packer, Inc.*, 790 F.Supp. 1464, 1470–71 (C.D.Cal. 1992).

**23.** *See also Gray v. Moore Business Forms, Inc.*, 711 F.Supp. 543, 544–45 (N.D.Cal.1989) (the one-year time limitation is procedural).

tate strongly in favor of finding that the one-year time limitation is jurisdictional.

First, there is the language of the statute. The prohibitive language of the one-year time limitation ("a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action") contrasts with the permissive phrasing of the 30–day limit found in the second paragraph of § 1446(b) ("a notice of removal may be filed within thirty days ..."). If Congress had intended for the one-year time limitation to have the same procedural status as the 30–day time limitation, it is reasonable to conclude that Congress would have phrased the limitation in the same permissive terms, *e.g.,* "a notice of removal may be filed no later than one year after the commencement of the action." As the court noted in *Foiles,*

> [§ 1446(b)] states that "notice of removal ... shall be filed within thirty days" of defendant's receipt of pleadings that indicate the existence of federal jurisdiction. Similarly, when federal jurisdiction arises sometime after the commencement of a case, § 1446(b) states that "a notice of removal may be filed within thirty days." Neither of these time limits is phrased with the sort of definite proscription found in the 1988 amendment.

*Foiles,* 730 F.Supp. at 110.

Second, as I have noted, general principles of federal jurisdiction—*viz.,* that federal courts are courts of limited jurisdiction and that doubts as to the existence of removal jurisdiction should be resolved in favor of remand—also persuade me that the construction that is more restrictive of federal diversity jurisdiction is the correct construction.

Third, and most important, construing the one-year time limitation as jurisdictional makes sense in light of the overall structure of the removal rules. In our system of federalism, rules concerning which claims may or may not be heard by a federal court are created in light of four basic values: judicial economy, procedural convenience, fairness to litigants, and comity to the states. *Accord Hewlett v. Davis,* 844 F.2d 109, 116 (3d Cir.1988). Certain removal rules are deemed procedural and some are jurisdictional. The effect of § 1447(c) is to "assign to the court concern for its jurisdictional prerequisites" and to "consign procedural formalities to the care of the parties." *In re Allstate Ins. Co.,* 8 F.3d 219, 223 (5th Cir.1993) (alteration in original). There is a logic in this distinction. Waivable procedural rules, such as the 30–day rule of § 1446(b), operate primarily to ensure fairness among litigants. Taking the 30–day rule as an example, this rule prevents out-of-state defendants from waiting to see how litigation goes in the state court, then removing to federal court if things go badly. Because litigants are assumed to be able to look after their own interests, it is not for the federal court to enforce, *sua sponte,* a rule that exists mainly for the plaintiff's protection.

Non-waivable jurisdictional requirements, on the other hand, serve more systemic goals. For example, the $75,000 amount-in-controversy requirement is a non-waivable jurisdictional requirement. *Meritcare Inc. v. St. Paul Mercury Ins. Co.,* 166 F.3d 214, 217 (3d Cir.1999). It exists not for the benefit of individual litigants, but for the sake of judicial economy. *See Payne v. Goodyear Tire & Rubber Co.,* 229 F.Supp.2d 43, 52 (D.Mass.2002) (*citing Zahn v. International Paper Co.,* 414 U.S. 291, 304 n. 4, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) (Brennan, J. dissenting)). While litigants in an adversarial system are assumed to look out for their own immediate interests, it is not expected that they will be the sole enforcers of rules targeted at

protecting the system as a whole. That task falls to the courts.

The one-year time limitation found in the second paragraph of § 1446(b), like the amount-in-controversy requirement, serves systemic interests, *viz.*, judicial economy and comity. The legislative history of the 1988 amendment to § 1446(b)—which instituted the one-year time limitation—is quite clear on this.[24] The one-year time limitation was viewed by Congress as "a means of reducing the opportunity for removal after substantial progress has been made in state court." S. Res. 1482, 100th Cong.2d Sess., 134 CONG. REC. S16308 (Oct. 14, 1988). I do not assume that Congress, in enacting the one-year time limitation, intended to entrust these systemic goals to the attentiveness or tactical calculations of litigants.

### CONCLUSION

■ Because the one-year time limitation of § 1446(b) applies to this case, and because it is jurisdictional, I find that I lack subject matter jurisdiction to consider this case further. The case will be remanded to the Court of Common Pleas of Wayne County. All other motions pending before the Court will be denied as moot.

### *ORDER*

**NOW**, this _____ day of January 2003, **IT IS HEREBY ORDERED** that:

1. Defendants Dring and Asaro's motion to stay concurrent state court proceedings (Doc. 57) is DENIED.

2. This matter is remanded to the Court of Common Pleas of Wayne County.

3. All other motions currently before the Court concerning this matter are DENIED as moot.

4.· The Clerk of Court shall mark this case closed.

---

24. *See* The Judicial Improvements and Access to Justice Act, Pub.L. 100–702, 102 Stat. 4642–4673 (1988); *Rodriguez v. ACandS, Inc.*, 2001 WL 333101at *1–3 (E.D.La. Apr. 4, 2001) ("it is obvious from the legislative history of this provision that its purpose was to reduce the opportunity for removal late in the proceedings, because this can result in disruption or delay of the action.... Thus, Congress was concerned with allowing parties to remove a case after the case has made substantial progress in state court").